DIANNE D. ALEXANDRE, Appellant, v CHASE MANHATTAN
BANK, N.A., et al., Respondents; JOSEPH E. DAVIS, Judg-
ment-Debtor-Respondent.

First Department, March 21, 1978

### APPEARANCES OF COUNSEL

*Herbert Monte Levy* for Joseph E. Davis and others, respondents.

*Howard R. Slonim* of counsel *(Silk, Slonim & Young, P. C.,* attorneys), for appellant.

*Kenneth A. Perko, Jr.,* of counsel *(Milbank, Tweed, Hadley & McCloy,* attorneys), for Chase Manhattan Bank, N.A., respondent.

*William D. Hand* of counsel *(Stanley L. Kantor* with him on the brief; *Forsythe, Le Viness & Pearsons,* attorneys), for Teachers Insurance and Annuity Association and another, respondents.

### OPINION OF THE COURT

EVANS, J.

Petitioner and respondent Davis were at one time married. They entered into a separation agreement in 1965 that provided for alimony and child support. In February, 1976, petitioner obtained a judgment against respondent for arrears of alimony and child support. *(Alexandre v Davis,* 90 Misc 2d 368, mod 57 AD2d 764.) Now cast in the role of judgment creditor, petitioner moved under CPLR 5201 for an order permitting her to invade the principal of three trust or pension funds in which respondent had an equity in satisfac-

tion of her claim against him. The trial court denied her petition.

■ Mrs. Alexandre notes that a judgment creditor may proceed against any property in which the judgment debtor maintains a recognizable interest that is not exempt from enforcement, and places great reliance upon *Lerner v Williamsburg Sav. Bank* (87 Misc 2d 685) claiming that the funds held by Chase Manhattan Bank were placed there voluntarily by Dr. Davis and subject to his control. In *Lerner,* the court found that the funds held by the bank were property of the partnership in which he held a 20% interest and that according to partnership law the money belonged to him. The court held that the only effect of the "Keogh" plan was to defer taxes on profits of the partnership, and that the funds belong to the partners proportionate to their interest, and that the trust can be abrogated at any time that the beneficiary (Dr. Lerner) desires. She also cites *Sheehan v Sheehan* (90 Misc 2d 673, 674) where the court found that "The funds represent moneys due and payable to the settlor upon demand", and likewise *Parfumi v Bowery Sav. Bank* (NYLJ, March 9, 1976, p 5, col 3) where the court said "while by its terms the plan is distributable to the judgment debtor upon his attaining a certain age, nothing * * * precludes his withdrawal of the funds on demand at any time." In the instant case can we say that the plan may be abrogated at any time? Has Dr. Davis reserved to himself a recognizable interest in the plan? Let us now examine the stance adopted by respondent Chase.

■ Respondent Chase Manhattan Bank, holding funds under its master trust and retirement plan for self-employed individuals, master plan, contends that by the terms of its agreement no portion of the funds entrusted to them is presently accessible to the judgment debtor. Chase points to paragraph VII(B)(1)(a) as an unequivocal limitation on an owner-employee's right to order payment to himself and that it is incorporated by reference into each and every provision of the plan contemplating distributions, whether based on normal retirement or termination of the plan. The paragraph in question simply states that no distribution shall be made to an owner-employee before age 59½ except upon death or disability. It is clear from Chase's cross-references that the whole concept of distribution revolves around paragraph VII. Chase clearly asserts that their Keogh Plan reserves to Chase the right to prohibit contractual withdrawals, and that its

contractual relationship with the judgment debtor does not lend itself to unilateral modification. As Chase goes on to point out, if petitioner were placed fully in the shoes of the judgment debtor, she would find that she still could not get anything from Chase. "Even the compelling claim of a wife for alimony and support cannot reach a property interest unavailable to her husband" *(Rosenberg v Rosenberg,* 259 NY 338). EPTL 7-3.1 states that a trust disposition for the use of the creator is void as to present or future creditors of the creator. Inasmuch as the intention of the parties to the trust, with its limitations, is not made clear, the application of section 7-3.1 will require the type of expert testimony that can only be adduced at a plenary proceeding.

Respondent is also a participant in the Teachers Insurance Annuity Association (TIAA) and the College Retirement Equities Fund which petitioner also seeks to invade. She seeks recovery of the accumulated premiums paid for the purchase of the annuity contracts, or in the alternative she seeks appointment as receiver and to have the annuity immediately paid over to her. The premiums are paid by the employer New York Medical College through employer contributions and deductions from the salary of the judgment debtor. The trial court held that there were disputed facts as to who owned the premiums paid to TIAA and thus petitioner must be relegated to a plenary action. In addition, TIAA argues persuasively that there is neither a debt owed to respondent Davis, nor any property in the possession of TIAA in which Dr. Davis has a property interest. TIAA citing *Matter of Cohen v First Nat. City Bank* (49 Misc 2d 141, 145) "the critical test is whether the judgment debtor has an interest which he might reach * * * only that interest may be reached by this creditor, and only at the time and to the extent that it is ripe". Again, the judgment creditor can have no rights greater than the judgment debtor. Respondent TIAA contends further that the premiums paid by employer and judgment debtor do not constitute property in which the judgment debtor has an interest. The moneys paid under the annuity contract are neither conditional nor refundable and the judgment debtor has no "interest" in them. The only interest he has is a contingent interest which will pay him a monthly amount if he is alive on the starting date. Further, appellant relies upon the fact that the annuitant may accelerate the annuity starting date to the first day of any month subsequent to the

month of election as vesting him with an interest. The annuitant has a personal and nontransferable right to accelerate the starting date of the annuity; not a right to reach the premiums paid for the purchase of annuities. Further, only where there is a specific provision, in the contract or by law, for the refund of premiums, or where there is a repudiation by the insurer, is the insured entitled to a refund of premiums. (See, e.g., *New York Hotel Trades Council v Prudential Ins. Co. of Amer.,* 1 Misc 2d 245.) Referring to the first page of the "Retirement Annuity Contract" the language clearly spells out the intentions and obligations of the parties to wit: "This contract makes *no* provision for cash surrender or loans and *cannot* be assigned." (Emphasis provided.) This provision is consistent with the College Retirement Equities Fund enabling statute (L 1952, ch 124, § 9) which provides that no money or other benefit derived from or rendered by the corporation, nor any rights or interest of any participating person in any benefit provided by the corporation shall be subject to assignment, pledge, attachment, garnishment or other process or be seized, taken, appropriated or applied by any operation of law to pay any debt or liability of any such person. See also subdivision 3 of section 166 of the Insurance Law which states in pertinent part: "The benefits, rights, privileges and options which, under any annuity contract, heretofore or hereafter issued are due or prospectively due the annuitant, who paid the consideration for the annuity contract, shall not be subject to execution nor shall the annuitant be compelled to exercise any such rights, powers or options contained in said annuity contract, nor shall creditors be allowed to interfere with or terminate the contract, except * * * (b) that the court may order such annuitant to pay to a judgment creditor or apply on the judgment, in installments, such portion of such *benefits,* as to the court may appear just and proper" (emphasis provided). We now have not only the intentions of the parties as to their rights and obligations spelled out, but also the legislation that controls, and obviously under the existing circumstances these pension funds are beyond the reach of petitioner.

Dr. Davis and Dr. Mininberg are trustees of the Davis-Mininberg, M.D., P.C. Pension Trust. Respondents point out that the fund is not a current debt or property interest capable of assignment or transfer and that Dr. Davis has only a future and not a present right to any payment and that he

has reserved nothing to himself. An effort to divine the intentions of the parties, or establish present rights and obligations would be futile as the record is devoid of a copy of the Davis-Mininberg Trust; any effort so oriented will first necessitate a formal proceeding or at least submission of the pertinent documentary evidence before resolution.

Accordingly, judgment, denominated an order, Supreme Court (GELLINOFF, J.), entered March 7, 1977, based upon a December 15, 1976 opinion of CULKIN, J., dismissing this petition without prejudice should be modified on the law without costs, the petition should be reinstated to the extent that a hearing is directed to be held on the Chase Manhattan Trust and the Davis-Mininberg Pension Trust, and otherwise should be affirmed and all executions left outstanding.

KUPFERMAN, J. P., BIRNS, SILVERMAN and FEIN, JJ., concur.

Judgment (denominated an order), Supreme Court, New York County, entered on March 7, 1977, unanimously modified, on the law, the petition reinstated to the extent that a hearing is directed to be held on the Chase Manhattan Trust and the Davis-Mininberg Pension Trust, and otherwise affirmed, without costs and without disbursements, and all executions left outstanding.